UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| RONALD WAYNE EVANS, Individually, § | | |
| and as Administrator of THE ESTATE of § | | |
| LISA EVANS, Deceased, and as Next Friend § | | |
| of NICHOLAS TYLER EVANS, a Minor § | | |
| Child, BONNIE BARNETT, and § | | |
| DONALD L. MANSKER, JR. § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | CIVIL ACTION NO. V-03-09 | |
| § | | |
| TOYOTA MOTOR CORPORATION, and § | | |
| TOYOTA MOTOR SALES, U.S.A., INC., § | | |
| § | | |
| Defendants. | | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendants' Motion to Exclude the Testimony of Arthur Fisk (Dkt. #160). After considering the motion, the responses of the parties, and the applicable law, the Court is of the opinion that the motion should be DENIED.

This products liability case arises out of an incident that occurred at Plaintiffs' residence on June 29, 2002. According to Plaintiffs' allegations, Lisa Evans pulled her 2000 Toyota Land Cruiser into the garage and placed the vehicle in what she thought was "park." Mrs. Evans left the vehicle running and got out to remove items from the vehicle's cargo area. According to Plaintiffs' defect allegations, the Land Cruiser was not in "park" at this time, but was actually in a position between "park" and "reverse." This alleged position between "park" and "reverse" caused the vehicle to slip into "reverse," and Mrs. Evans became positioned between the Land Cruiser's open door and the side of the garage. Mrs. Evans died as a result of the injuries she received in the accident.

Plaintiffs filed suit on January 21, 2003. Plaintiffs allege causes of action based on strict liability, negligence, misrepresentation, and breach of warranty, claiming that the design of the Land Cruiser's transmission allowed the transmission to be placed in a position between "park" and "reverse," which allowed the vehicle to slip out of gear and roll backwards.

## Discussion

"Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 589 (1993)). "This obligation pertains not only to scientific evidence but to 'all expert testimony.'" *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580 (5th Cir. 2001) (quoting *Kumho*, 526 U.S. at 147). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

The Fifth Circuit has found that assisting the trier of fact means "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *Eymard v. Pan Am. World Airways*, 795 F.2d 1230, 1233 (5th Cir. 1986)); *see also Matherne v. MISR Shipping Co.*, 1991 U.S. Dist. LEXIS 7723 *2 (E.D. La. 1991) (excluding expert whose testimony "would offer little more than argument"). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152, 119 S.Ct. 1167.

Federal Rule of Evidence 702, which was amended in 2000, provides as follows

concerning the admissibility of testimony of an expert witness:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702. "Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Curtis v. M & S Petroleum, Inc*., 174 F.3d 661, 668 (5th Cir. 1999). The Fifth Circuit has described this Court's gatekeeping function under Rule 702 and *Daubert* as follows:

> Many factors bear on the inquiry into the reliability of scientific and other expert testimony, including, but not limited to, whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community.

*Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577 (5th Cir. 2004) (citing *Daubert* at 593-94.

The first step in the analysis, then, is to determine whether the expert's testimony is reliable, which requires "an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). Whether an expert's testimony is reliable is a fact-specific inquiry. *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 618 (5th Cir. 1999). The 2000 amendments to Rule 702 reflect the Supreme Court's determination that the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant. *Kumho* 526 U.S. at 151. The four factors identified in Daubert thus form the starting point of the inquiry into the admissibility of expert testimony. *Pipitone v.*

*Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quotation omitted).  The Court may also consider other factors, if relevant, such as "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion," and "[w]hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's notes (2000 Amendment). Although the Daubert analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, however, the test does not evaluate the expert conclusions themselves. *Daubert*, 509 U.S. at 594-95; *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

  Defendants seek to exclude the testimony of Arthur Fisk because, they argue, he has no practical experience designing warnings for automobiles or any other consumer product.  Defendants further maintain that Fisk's methodology is unreliable because it is based on an incomplete analysis and subjective speculation.  Plaintiffs respond that Fisk is well qualified to present expert testimony, his methodologies are sound, and his testimony will be helpful to the jury.

  First, Defendants argue that Fisk lacks any relevant experience regarding warnings on consumer products generally and warnings on automobiles specifically.  To support this position, Defendants contend that Fisk has never designed a warning system for an automobile, and has never taught a class that dealt, in whole or in part, with automobile warning systems.  Additionally, they maintain that Fisk has never designed a warning system for any consumer product, nor has he ever produced a warning for any mass-produced product.

  While it may be true that Fisk has never designed a warning system for an automobile or consumer product, the Court believes that he is still qualified to testify as an expert regarding human factors, including providing testimony relating to the creation of a warning for the alleged

4

"false-park" phenomenon. Fisk holds a doctorate in Experimental Psychology and is on the faculty of the School of Psychology at Georgia Tech. He is also a Certified Human Factors Professional, a certification issued by the Board of Certification in Professional Ergonomics. He is a member of several professional organizations in the field of human factors and ergonomics, including the Human Factors and Ergonomics Society, the American Psychological Association's Division of Applied Experimental and Engineering Psychologists, and the International Conference on Engineering Psychology and Cognitive Ergonomics. He has also published and given presentations on a wide variety of topics, including numerous publications and presentations on issues relating to warnings and warning design. Fisk also testified in his deposition that he teaches "documentation design...warning and development design." Based on this testimony, the Court finds that Fisk is qualified to testify.

Defendants also argue that Fisk's methodologies are unreliable because they are incomplete and based on nothing more than his subjective speculation. Specifically, Defendants contend that Fisk does not state how his proposed alternate warning should be incorporated into the Land Cruiser. They further argue that Fisk stated repeatedly in his deposition that "further analysis" and "further testing" is necessary to determine exactly how the warning system on the subject Land Cruiser should be changed. They maintain that, in effect, Fisk is stating that his own analysis is incomplete, while attempting to argue that the warning system in the Land Cruiser is defective.

According to Fisk's expert report, and the addendum explaining human factors analysis, there are specific steps in performing an initial human factors review. The first step of the review requires an evaluation of the hazards and risks associated with the use of a particular product. Once it is determined that a hazard actually exists, the next step is to evaluate the need for a warning system. This step is accomplished by evaluating the existence of hidden hazards and

performing a hazard hierarchy analysis.  Based on this analysis, an initial warning is created.  This initial warning is then reviewed by at least one other warnings expert.  A readability analysis and an inference-requirements analysis is required.  Fisk states that at this point, the warning would probably be redesigned.  The final step of the analysis is user testing, which is accomplished by testing the warning on a group of individuals who are representative of the user population under use case scenarios.

Fisk's report outlines the procedure he followed in coming to his conclusions.  The report contains an evaluation of the hazards and risks associated with use of the Land Cruiser as it relates to the "false-park" phenomenon.  It then provides an analysis of the need for a warning system by evaluating the existence of the hidden hazard –the ability of the gear shift to be placed in a "false-park" and then the potential for it to spontaneously shift into reverse.  Fisk outlines that an initial warning was created and then reviewed by Dr. Wendy A. Rogers.  Based on Dr. Rogers suggestions, the warning wording of the initial warning was changed.  The final result was the suggested warning listed by Fisk in his expert report.

Defendants' motion does not challenge this process, as outlined, in any way.  Rather, Defendants argue that Fisk's analysis is incomplete because he has not taken the final step outlined in the process–focus group testing.  The fact that Fisk did not submit the warning for user testing does not, in the Court's opinion, damage the methodology undertaken in the initial human factors review. Each of the steps outlined by Fisk as being a part of the method for conducting an initial human factors review were followed with regard to the Land Cruiser's warning system.  Fisk's report indicates that the focus group testing is another stage in the development of an effective warning and, as such, appears to be separate from the initial human factors review performed to determine whether a warning is necessary or desirable.

Thus, although Defendants argue that because Fisk has not tested his proposed warning, he cannot say with absolute certainty that the warning system in the Land Cruiser is defective, the Court believes that the two can be separated. Fisk's initial human factors analysis revealed the need for a warning system based on hidden hazards he identified as being present within the Land Cruiser. Based on those findings, he has submitted a proposed warning which, in his opinion, would bring the hidden hazard into focus for the user/consumer of the Land Cruiser. His methodology is open and transparent concerning the steps he followed in reaching those conclusions. That Fisk has not completed the final testing of his proposed warning by placing it in front of focus groups does not diminish the fact that he has created a proposed warning system that, in the opinion of Fisk and the other warnings expert he consulted, would reduce the potential hidden hazard risks created by the "false-park" phenomenon. The lack of user testing will be an area ripe for cross-examination, but does not create a sufficient challenge to the reliability of the process itself to merit disqualifying Fisk as an expert. As such, the motion to exclude the testimony of Arthur Fisk is DENIED.

It is so ORDERED.

Signed this 18th day of August, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE