UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| RONALD WAYNE EVANS, Individually, | § | |
| and as Administrator of THE ESTATE of | § | |
| LISA EVANS, Deceased, and as Next Friend | § | |
| of NICHOLAS TYLER EVANS, a Minor | § | |
| Child, BONNIE BARNETT, and | § | |
| DONALD L. MANSKER, JR. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-03-09 |
| | § | |
| TOYOTA MOTOR CORPORATION, and | § | |
| TOYOTA MOTOR SALES, U.S.A., INC., | § | |
| | § | |
| Defendants. | | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendants' Motion for Partial Summary Judgment Regarding

Exemplary Damages. (Dkt. # 124).  The Court, having reviewed the motion, the responses of the

parties, and the applicable law, is of the opinion that the motion should be granted in part and

denied in part as explained below.

**Factual and Procedural Background**

This products liability case arises out of an incident that occurred at Plaintiffs' residence

on June 29, 2002.  According to Plaintiffs' allegations, Lisa Evans pulled her 2000 Toyota Land

Cruiser into the garage and placed the vehicle in what she thought was "park."  Mrs. Evans left the

vehicle running and got out to remove items from the vehicle's cargo area.  According to

Plaintiffs' defect allegations, the Land Cruiser was not in "park" at this time, but was actually in a

position between "park" and "reverse."  This alleged position between "park" and "reverse"

caused the vehicle to slip into "reverse," and Mrs. Evans became positioned between the Land

Cruiser's open door and the side of the garage.  Mrs. Evans died as a result of the injuries she received in the accident.

Plaintiffs filed suit on January 21, 2003.  Plaintiffs allege causes of action based on strict liability, negligence, misrepresentation, and breach of warranty, claiming that the design of the Land Cruiser's transmission allowed the transmission to be placed in a position between "park" and "reverse,"  which allowed the vehicle to slip out of gear and roll backwards.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).  "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is

2

such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).  However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

**Discussion**

Defendants argue that to be entitled to exemplary damages, Plaintiffs must show that Defendants acted with gross negligence in designing, testing, and manufacturing the subject vehicle.  However, Defendants assert that Plaintiffs have no evidence that Defendants were grossly negligent.  Defendants maintain that Plaintiffs cannot use evidence of other allegedly "similar" incidents to support their gross negligence claims because this evidence shows, at most, knowledge but is not evidence that Defendants acted with conscious indifference.  Likewise, Defendants argue that evidence of the existence of safer alternative designs is not evidence of conscious indifference without a further showing that Defendants knew the alternative design was safer but nonetheless chose to implement the defective design.  Finally, Defendants assert that any opinions rendered by Plaintiffs' experts about the results of their testing constitutes nothing more than conjecture regarding Defendants' knowledge of the supposed defect.  Rather, Defendants contend that they engaged in testing in compliance with the applicable government safety standards and that it is, therefore, impossible for Plaintiffs to argue that Defendants acted with gross negligence.

Under Texas law, exemplary damages may be awarded only if the claimant proves by clear

and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003.  This burden of proof may not be shifted to the defendant or satisfied by evidence of ordinary negligence, bad faith, or a deceptive trade practice. *Id.*  Under the provisions of the Civil Practices and Remedies Code, "malice" is defined as a specific intent by the defendant to cause substantial injury or harm to the claimant. TEX. CIV. PRAC. & REM. CODE § 41.001(7). The term "gross negligence" is defined as

> an act or omission:
> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE § 41.001(11).[1]

Recognizing the practical difficulty of producing direct evidence of conscious indifference short of the defendant's admission, the Texas Supreme Court, in *Williams v. Steves Indus., Inc*., stated that "the plaintiff need not prove the defendant's subjective state of mind by direct evidence," and authorized proof of this element by circumstantial evidence. 699 S.W.2d 570, 573 (Tex. 1985).  The court later reaffirmed this holding in *Transportation Insurance Co. v. Moriel*, stating that "the defendant's subjective mental state can be proven by direct or circumstantial evidence."  The court further stated that

---

[1]Under the prior version of the code, in effect at the time of the incident, the definition of gross negligence was a subpart of the definition of malice.  The old subpart (b) of the malice definition has now been separated to create the definition of gross negligence.  The applicable standards have not, however, been changed.  *See* Acts 2003, 78th Leg., ch. 204, § 13.02, eff. Sept. 1, 2003.

Determining whether an act or omission involves extreme risk or peril requires an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight. In every negligence or gross negligence case, some injury has allegedly occurred. However, the magnitude of the injury may be entirely disproportionate to the riskiness of the behavior. For example, inadvertently dropping a wooden board into the metal hold of a ship may constitute negligence, but cannot be gross negligence. This is so even though the board, upon landing, triggers a Rube Goldberg chain reaction, eventually causing the whole ship to explode. *See In re Polemis*, [1921] 3 K.B. 560. If somebody has suffered grave injury, it may nevertheless be the case that the behavior which caused it, viewed prospectively and without the benefit of hindsight, created no great danger. In such a case, punitive damages are not appropriate.

*Id.* (footnote omitted).

Defendants' motion asserts that, based on the Texas Supreme Court's holding in *General Motors Corporation v. Sanchez*, Plaintiffs' evidence is insufficient to show conscious indifference. *See Gen'l Motors Corp. v. Sanchez*, 997 S.W.2d 584 (Tex. 1994). In *Sanchez*, the court determined that, when considered as a whole, the evidence presented at trial rose to such a level that reasonable minds could differ over whether General Motors ("G.M.") was actually aware of the mis-shift danger, but that this fact alone did not establish conscious indifference. *Id.* at 596.

In making this determination, the court considered the testimony of two experts presented by the plaintiffs at the trial.  The first expert opined that G.M.'s conduct was a conscious decision and the second opined that G.M. "knew people were getting hurt and they made the decision not to do anything about the design . . . or to warn properly."  *Id.*  In analyzing this testimony, the court determined that the first expert's testimony shed little light on the relevant issue because his opinion was in response to a hypothetical question about a manufacturer who gives no warning, and did not account for the fact that G.M. had given a warning.  As a result, the court stated that "[i]f an expert's opinion is based on facts that are materially different from the facts in evidence,

then the opinion is not evidence." *Id.*  As to the second expert, the court determined that the mere

fact that G.M. did not implement a new design is not evidence that it was not working on the

problem.  The court noted that G.M had presented evidence of engineering work over a period of

years to modify and improve its transmissions and further noted that there was no evidence that

G.M. was aware of any other design with a better safety record than the subject transmission.

Defendant maintains that the only evidence Plaintiffs' experts can provide is the sort of

"tautological statements" already rejected by the Texas Supreme Court as insufficient to establish

conscious indifference.  They further contend that evidence of other allegedly similar incidents to

show conscious indifference is inadmissible to the extent that the alleged incidents happened after

the 2000 Land Cruiser was designed and produced because Defendants' conduct must be judged at

the time the acts occurred without the benefit of hindsight.  *See Moriel*, 879 S.W. 2d at 23.  To the

extent that the "other incidents" occurred prior to the design and production of the 2000 Land

Cruiser, Toyota argues that mere knowledge of the incidents is not enough to constitute conscious

indifference.

In response to this argument, Plaintiffs assert that the evidence suggests that Defendants had

knowledge of the "false park phenomenon" but disregarded this evidence and continued to sell the

vehicle to consumers. To support their assertion that Defendants were consciously indifferent,

Plaintiffs provide the report of their expert, Edward Fritsch.  Fritsch opines that the

> characteristics of the "false park" phenomenon, specifically domains where the
> shift selector lever can be stopped between park and reverse, and the likelihood of
> spontaneous shifting of the transmission from "false park" into reverse are
> documented in the Toyota Engineering Standard ("TSD") 2507.6, meaning that both
> "false park" and possible spontaneous shifting into reverse were not only
> foreseeable by Toyota, but actually had been foreseen, were known and had been
> quantified by Toyota at the time of Mrs. Evans accident.

Additionally,  Plaintiffs provide evidence of "other incidents" involving the subject transmission.

Although Defendants contend that these "other incidents" occurred after the date the transmission was designed and manufactured, the design defect allegations are not the only allegations in this case for which Plaintiffs seek exemplary damages.  Plaintiffs assert that evidence that a defendant continued to sell an unsafe product after receiving notice of the defect will support an award of exemplary damages.

To support this proposition, Plaintiffs cite to the Fifth Circuit Court of Appeals decision in *Soden v. Freightliner Corporation*. 714 F. 2d 498 (5th Cir. 1983).  In  *Soden*, the court held that "[i]n a products liability case based on defective design, evidence of the defendant's knowledge of other accidents may be relevant to its notice or knowledge of the defect, if the accidents occurred under substantially similar circumstances." *Id*. at 508 (citing *Prashker v. Beech Aircraft Corporation*, 258 F.2d 602, 608 (3d Cir.); *Ramos v. Liberty Mutual Insurance Co.*, 615 F.2d 334, 338 (5th Cir.1980) 449 U.S. 1112, (1981)).  The court of appeals further stated that "[s]uch evidence is relevant because it makes more probable 'a fact that is of consequence to the determination of the action'--in this case Freightliner's knowledge of the defective design of its fuel system, which was a required element in the appellees' claim for exemplary damages." *Id.* (citing *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex. 1981); *Maxey v. Freightliner Corp.*, 665 F.2d 1367 (5th Cir. 1982).

Plaintiffs' argument is thus couched in terms of Defendants' knowledge of the "other incidents" prior to the sale of the 2000 Land Cruiser to the Evans family.  Rather than arguing specifically that Toyota knew of the design defect prior to the manufacturing of the subject vehicle, Plaintiffs appear to be arguing that Toyota was grossly negligent in not warning potential buyers of a potential defect in the interaction between the neutral start switch and the gear shift linkage.  As such, Plaintiffs' evidence of "other incidents" is relevant to establish gross negligence on the

7

issues relating to Defendants' failure to warn. *Id.* (stating that evidence of prior litigation and allegations of a design defect which occurred prior to the incident involved in the pending litigation were relevant on the issue of manufacturer's notice) (citing *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir.1981); *Julander v. Ford Motor Co.*, 488 F.2d 839, 846 (10th Cir. 1973) (excluding the complaints as notice of defective design, however, because they were not prior to the plaintiff's accident); *Gardner v. Q.H.S., Inc.*, 448 F.2d 238, 244 (4th Cir. 1971) ("letters of complaints [nonlitigation] should have been admitted where they described identical or similar experiences");  *New York Life Insurance Co. v. Seighman*, 140 F.2d 930, 932-33 (6th Cir. 1944)).  *See also Sanchez*, 997 S.W.2d at 596 (holding that evidence of 500 other mis-shift incidents supported a finding of the objective element of the gross negligence inquiry).

　　　This evidence of  "other incidents," coupled with Fritch's testimony regarding Defendants' knowledge of the problem at the time the transmission was manufactured and marketed creates, in the Court's mind, a question of fact on the issue of gross negligence concerning the lack of warning.  A jury could find that Toyota's knowledge of the potential problem, the evidence of other incidents involving the gear shift linkage and the failure to take any action to warn drivers of the potential danger constituted gross negligence by the Defendant in the form of an omission.  As a result, the Court finds that summary judgment on the issue of exemplary damages concerning the issues relating to the lack of a warning is inappropriate at this time.

　　　The Court notes, however, that no evidence has been presented with regard to the alleged design defect and Defendants' decision to consciously disregard a safer alternative.  Although Plaintiffs' experts have opined about alternative designs which would allegedly cure the problem involved in this case, there is no testimony that Defendants were aware of these designs at the time of the incident. *See General Motors v Sanchez*, 997 S.W.2d 584, 597 (Tex. 1999) (holding that

exemplary damages for alleged design defect were inappropriate where there was no evidence that defendant was aware of a safer design or consciously chose not to implement it).  Nor is there any evidence that their decision not to implement a different design is the result of a conscious indifference to the safety of Defendants' consumers.  As a result, the Court finds that summary judgment on exemplary damages with regard to this issue is appropriate.

**Conclusion**

For the reasons stated above, Defendants' Motion for Partial Summary Judgment Regarding Exemplary Damages (Dkt. # 124) is hereby GRANTED in part and DENIED in part.

It is so ORDERED.

Signed this 19th day of August, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE