UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| RONALD WAYNE EVANS, Individually, § <br> and as Administrator of THE ESTATE of § <br> LISA EVANS, Deceased, and as Next Friend § <br> of NICHOLAS TYLER EVANS, a Minor § <br> Child, BONNIE BARNETT, and § <br> DONALD L. MANSKER, JR. § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> TOYOTA MOTOR CORPORATION, and § <br> TOYOTA MOTOR SALES, U.S.A., INC., § <br> § <br> Defendants. § | CIVIL ACTION NO. V-03-09 |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiffs' Motion to Disqualify James Garriott as an Expert Witness (Dkt. #168). The Court, having considered the motion, the arguments of the parties, and the applicable law, is of the opinion that Plaintiffs' motion should be DENIED.

This products liability case arises out of an incident that occurred at Plaintiffs' residence on June 29, 2002. According to Plaintiffs' allegations, Lisa Evans pulled her 2000 Toyota Land Cruiser into the garage and placed the vehicle in what she thought was "park." Lisa Evans left the vehicle running and got out to remove items from the vehicle's cargo area. According to Plaintiffs' defect allegations, the Land Cruiser was not in "park" at this time, but was actually in a position between "park" and "reverse." This alleged position between "park" and "reverse" caused the vehicle to slip into "reverse," and Mrs. Evans became positioned between the Land Cruiser's open door and the side of the garage. Mrs. Evans died as a result of the injuries she received in the accident.

Plaintiffs filed suit on January 21, 2003. Plaintiffs allege causes of action based on strict liability, negligence, misrepresentation, and breach of warranty, claiming that the design of the Land

Cruiser's transmission allowed the transmission to be placed in a position between "park" and "reverse," which allowed the vehicle to slip out of gear and roll backwards.

## Discussion

Plaintiffs filed a motion to disqualify the expert testimony of Dr. James W. Garriott on three separate, yet related, grounds. First, Plaintiffs argue that Dr. Garriott's testimony will not assist the trier of fact in determining a fact at issue and, therefore, should be excluded under Rule 402 of the Federal Rules of Evidence. Second, Plaintiffs argue that Dr. Garriott's testimony is unreliable and, therefore, should be excluded under Rules 702 and 402. And, in the alternative, Plaintiffs argue that any probative value that the testimony might offer is substantially outweighed by the prejudice that would result from references to marijuana and prescription drug use and, therefore, should be excluded under Rule 403. The Court will address the issues of relevance, reliability, and prejudice below.

### I. Relevance

As an initial matter, all testimony must be relevant in the sense that the opinions offered must assist the trier of fact in determining a fact at issue. FED.R.EVID. 402. Under Rule 401, "relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. The Supreme Court has concluded that this basic standard of admissibility is "a liberal one." *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 587 (1993).

Plaintiffs' object to the relevancy of Dr. Garriott's testimony on the grounds that he fails to allege Lisa Evans was under the influence of marijuana or prescription drugs at the time of her death. In support of their argument, Plaintiffs focus on Dr. Garriott's admission that the toxicology report

based on the autopsy blood sample reveals only inactive norcarboxy-THC (*hereinafter* "COOHTHC") and trace elements of medications to which Lisa Evans was properly prescribed. Plaintiffs correctly conclude that this testimony standing alone would not help the trier of fact resolve whether or not Lisa Evans' judgment might have been impaired at the time of her death and thus whether Plaintiffs have sufficiently established the element of causation. Any evidence of drug use (prescription, illicit, or otherwise) is only relevant in this case if it tends to establish that Lisa Evans' cognitive skills and/or psychomotor skills were impaired at the time of her death. However, the purpose of Dr. Garriott's testimony is not simply to reiterate the findings of the toxicology report, but to deduce from those findings that Lisa Evans likely *was* under the influence of THC (the pharmacologically significant component of marijuana) and prescription medications at the time of her death. In Plaintiffs' own motion, they cite that portion of Dr. Garriott's deposition testimony where he states that he "believe[s] that [Lisa Evans' cognitive and psychomotor skills] would have been [impaired]."[1] Dr. Garriott explains at length in his affidavit why he believes that the 22 ng/mL of COOHTHC detected in the autopsy sample of Lisa Evans' blood would indicate that THC was still present in her system at the time of her death.[2] He offers at least four separate explanations for why THC did not show up in the toxicology analysis performed on the autopsy blood sample and opines that Lisa Evans had used marijuana recently enough to have still been under the influence of THC at the time of her death. Similarly, Dr. Garriott concludes in his report that the trace elements of Valium and Flexeril recorded in the toxicology report indicate that it was "very likely" that Lisa Evans would

---

[1] Plaintiffs' Motion to Disqualify James Garriott as an Expert Witness (*hereinafter* "Plaintiffs' Motion"), p. 10 (citing Plaintiffs' Exhibit E, Oral Deposition of James W. [sic] Garriott, July 22, 2005).

[2] Defendants' Exhibit F, Affidavit of James C. Garriott, Ph.D., D-ABFT (*hereinafter* "Garriott Affidavit").

3

have been experiencing sedative and psychoactive effects of these drugs at the time of her death.[3] Furthermore, he opines that the effects of marijuana would have enhanced the effects of the prescription drugs.[4] Plaintiffs' relevancy argument relies, in large part, on the assertion that there is no evidence that Lisa Evans was *under the influence of* marijuana, Valium, or Flexeril at the time of her death. However, Dr. Garriott's testimony is precisely evidence that Lisa Evans was under the influence of these drugs at the time of her death and as such is probative as to the issue of Ms. Evans' proper or improper operation of her vehicle at the time of her death.

## II. Reliability

The probative value of Dr. Garriott's testimony relies in equal measure on the reliability of his scientific inquiry. Under *Daubert v. Merrell-Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court has made it clear that the "trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The reliability inquiry is grounded in Federal Rule of Evidence 702. "This obligation pertains not only to scientific evidence but to 'all expert testimony.'" *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580 (5th Cir. 2001) (quoting *Kumho*, 526 U.S. at 147). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

The Fifth Circuit has found that assisting the trier of fact means "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *Eymard v. Pan Am. World Airways*, 795 F.2d 1230, 1233 (5th Cir. 1986)); *see also Matherne v. MISR Shipping Co.*, 1991 U.S. Dist. LEXIS 7723

---

[3] Defendants' Exhibit A, Report of James Garriott (*hereinafter* "Report").

[4] *Id.*

*2 (E.D. La. 1991) (excluding expert whose testimony "would offer little more than argument").  The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152, 119 S.Ct. 1167.

Federal Rule of Evidence 702, which was amended in 2000, provides as follows concerning the admissibility of testimony of an expert witness:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). The Fifth Circuit has described this Court's gatekeeping function under Rule 702 and *Daubert* as follows:

> Many factors bear on the inquiry into the reliability of scientific and other expert testimony, including, but not limited to, whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community.

*Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577 (5th Cir. 2004) (citing *Daubert* at 593-94).

As the Court has already addressed the issue of general relevancy, the next step in the analysis, then, is to determine whether the expert's testimony is reliable, which requires "an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999).  Whether an expert's testimony is reliable is a fact-specific inquiry. *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 618 (5th Cir.

1999). The 2000 amendments to Rule 702 reflect the Supreme Court's determination that the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant. *Kumho* 526 U.S. at 151. The four factors identified in *Daubert* thus form the starting point of the inquiry into the admissibility of expert testimony. *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 245 (5th Cir. 2002) (quotation omitted). The Court may also consider other factors, if relevant, such as "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion," and "[w]hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's notes (2000 Amendment). Although the Daubert analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, however, the test does not evaluate the expert conclusions themselves. *Daubert*, 509 U.S. at 594-95; *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

In their motion, Plaintiffs object both to Dr. Garriott's qualifications and to the reliability of the methodology he employs in formulating his opinions. Plaintiffs' argument that Dr. Garriott is unqualified to testify as an expert forensic toxicologist is without basis. Dr. Garriott is an experienced forensic toxicologist and has been accepted as an expert in the field. Dr. Garriott has authored and co-authored numerous publications in the field, including a book entitled "Forensic Toxicology: Controlled Substances and Dangerous Drugs."[5] For the sake of brevity, the Court will refrain from enumerating Dr. Garriott's other relevant credentials,[6] and concludes that he is qualified to draw

---

[5] Garriott Affidavit, Exhibit A, Curriculum Vitae.

[6] For example, Dr. Garriott has worked as a toxicologist since 1961. He was the Chief Toxicologist at the Southwestern Institute for Forensic Sciences for twelve years. He has been on the editorial board of four different journals dealing with toxicology and forensic science. The Bibliography of Dr. Garriott's published works in the areas of pharmacology, toxicology and forensic science is nearly thirteen pages in length.

scientific conclusions from a forensic toxicology report and testify as to those conclusions as an expert witness.

Plaintiffs go on to object to the particular studies which serve as the bases for Dr. Garriott's conclusions about the pharmacological effects of the drugs present in Lisa Evans' system at the time of her death. However, the Court has thoroughly examined the studies upon which Dr. Garriott relies and determined that they satisfy the criteria for scientific validity under *Daubert*. The two Heustis studies upon which Dr. Garriott relies in his affidavit were published in the *Journal of Analytical Toxicology*, a scholarly peer review journal. Furthermore, both studies discuss the validity and confidence rates of the models employed and thus can be tested and evaluated by other experts in the field. Marilyn Heustis and her co-authors prepared both studies for the National Institute on Drug Abuse (NIDA), which is a division of the National Institute of Health (NIH). Dr. Heustis is a faculty member at Indiana University teaching a course on cannabinoids and forensic and analytical toxicology. Dr. Heustis is also the Acting Chief of a drug metabolism research program sponsored by NIDA. Dr. Garriott also relies upon R.C. Baselt's book *Disposition of Toxic Drugs and Chemicals in Man* ("Baselt text"), which was published by the Chemical Toxicology Institute. The American Board of Forensic Toxicology (AFTB) suggests that candidates for membership use the Baselt text when preparing for the AFTB examination. The Center for Disease Control also recommends the Baselt text as training material for its employees.

With regard to Dr. Garriott's testimony about Diazepam (Valium), Plaintiffs object to Dr. Garriott's reliance upon "an epidemiological study conducted in Saskatchewan, Canada"[7] without citing to any portion of the Garriott deposition where this study was discussed or offering any information about the study that would allow the Court to independently evaluate its reliability. The

---

[7] Plaintiffs' Motion, p. 19.

Court will assume that Plaintiffs were referring to a study entitled, *Risk of a traffic accident injury after a prescription for a benzodiazepine*, conducted and published by Neutel et. al in 1995 ("Neutel study"). The Neutel study was cited in the *Drugdex Drug Evaluations*, which is Exhibit G to Defendants' response. The Court construes the *Drugdex Drug Evaluations* as a standard drug desk reference for pharmacologists and toxicologists. The National Highway Traffic Safety Administration has used the Neutel study as a reference in its own evaluation of the effects of Diazepam on driving ability. The Neutel study was published in the *Annals of Epidemiology*, which is a peer reviewed, international journal devoted to epidemiologic research and methodological development. Because it finds that these sources are reliable bases for Dr. Garriot's testimony, the Court concludes that Plaintiffs' objections to Dr. Garriott's testimony are unfounded. Like Plaintiffs' other objections to the sources upon which Dr. Garriott relies, the accuracy of the Neutel study is a matter ripe for cross-examination.

Plaintiffs also argue that Dr. Garriott's opinion as to the lingering effects of THC is not supported by the Baselt text. However, the Court finds that Dr. Garriott's opinion is an appropriate interpretation of that portion of the Baselt text discussing the persistence of maximum psychological effects of THC. Disagreement about Dr. Garriott's interpretation of this text is a matter appropriate for cross-examination. Plaintiffs' reliance on the competing interpretation of a pharmacologist, Dr. Fran Gengo, suggests that they disagree more with Dr. Garriott's interpretation of the sources upon which he relies than the reliability of the sources themselves. It is well established law that the party who proffers expert testimony does not carry the burden of proving to the Court that the expert's assessment of the situation is correct. So long as the expert's scientific testimony is relevant and rests upon reliable grounds, it should be tested by the adversary process, including competing expert testimony and active cross-examination, rather than excluded from jurors' scrutiny.

Finally, the Court finds unpersuasive Plaintiffs' references to the legal standards developed in toxic tort cases. The standards discussed in the cited cases were designed to determine whether or not a particular chemical has any harmful effect.[8] In this case, however, the psychoactive effects of marijuana, Valium, and Flexeril are not disputed, and the issue is whether Lisa Evans was experiencing any of the known effects at the time of her death. The tests developed for toxic tort litigation are not amenable to quantifying or qualifying the known effect of a drug on a specific individual.

### III. Prejudice

Finally, the Court turns to the Plaintiffs' argument that Dr. Garriot's testimony should be excluded under Federal Rule of Evidence 403. Rule 403 states that evidence that is otherwise relevant may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." FED.R.EVID. 403. References to marijuana and prescription drug use are certainly prejudicial, but, "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *Ballou v. Henri Studios*, 656 F.2d 1147, 1155 (5th Cir. 1981). "In determining whether evidence is properly excludable under Rule 403, district courts must be cognizant of the fact that, because Rule 403 operates to exclude relevant evidence, application of the rule 'must be cautious and sparing'." *Brady v. Fort Bend County*, 145 F.3d 691, 715 (5th Cir. 1998) (quoting *United States v. Pace*, 10 F.3d 1106, 1116 (5th Cir. 1993)). For this reason, the court should consider as true the conclusions of the expert when striking the balance between the unfair prejudice of the testimony and its probative value.

---

[8] *See e.g.*, McClain v. Metabolife International, Inc., 401 F.3d 1233 (11th Cir. 2005) (employing a "dose-response relationship" test to determine whether expert testimony that a weight-loss supplement containing ephedrine and caffeine was capable of causing strokes and heart attacks should have been excluded); Moore v. Ashland Chemical Co., 151 F.3d 269 (5th Cir. 1998) (upholding the district court's decision to exclude expert testimony that exposure to a chemical solution caused Plaintiff's pulmonary illness on the grounds that the expert was unfamiliar with the chemical or exposure to the chemical).

*Ballou v. Henri Studios*, 656 F.2d at 1154.

In this case, evidence of impairment due to marijuana and prescription drug use is highly probative of Lisa Evans' ability to react, perceive and reason, which are at issue. Plaintiffs object to the probative value of Dr. Garriott's testimony on the grounds that he failed to conclude that Lisa Evans was "intoxicated" at the time of her death. Plaintiffs argue that the admissibility of drug use under Rule 403 requires evidence of "intoxication."[9] However, the cases cited in Plaintiffs' Motion do not support this proposition. The probative value and reliability of Dr. Garriott's expert testimony on the effects of marijuana and prescription drug use do not require that the science employed be able to declare that "a precise quantity [of THC or Valium or Flexeril] in the bloodstream produces an equally precise degree of impairment." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 86 (1st Cir. 1998). The prejudicial effects of reference to marijuana and prescription drug use do not substantially outweigh the probative value of testimony establishing impairment that could call into question Plaintiffs' version of events.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' Motion to Disqualify James Garriott as an Expert Witness (Dkt. #168) is DENIED.

It is so ORDERED.

---

[9] Plaintiffs' Motion, p.7.

Signed this 2nd day of September, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE